UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
CLERK

7/9/2015 3:45 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

--------------------------------------------------------X
S&K COMMACK DEVELOPMENT, LLC,

                Plaintiff,

       -against-

HASN DRY CLEANERS, INC., d/b/a Kwik
Cleaners, and HOWARD SINGER,

               Defendants.
--------------------------------------------------------X

**OPINION & ORDER
13-CV-5297 (SJF)(ARL)**

FEUERSTEIN, J.

I.     Introduction

On September 24, 2013, plaintiff S&K Commack Development, LLC ("plaintiff")
commenced this action against Hasn Dry Cleaners, Inc. ("Hasn") and Howard Singer ("Singer")
(collectively, "defendants")[1] pursuant to, *inter alia*, the Comprehensive Environmental Response,
Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607(a) and 9613(g), seeking, *inter
alia*, judgment (a) in the amount of eighty-three thousand eight hundred eighty-five dollars
($83,885.00), with interest, and (b) declaring that defendants are responsible for any future
response costs incurred for remediation of the hazardous waste on the premises located at 6230-E
Jericho Turnpike, Commack, New York ("the Site"). Pending before the Court is plaintiff's
motion for the entry of a default judgment against defendants pursuant to Rule 55 of the Federal
Rules of Civil Procedure. For the reasons set forth below, plaintiff's motion is granted to the
extent set forth herein.

---

[1] Plaintiff voluntarily dismissed its claims against a third defendant, Trumball Insurance
Company ("Trumball"), on December 5, 2013. (See Docket Entry ["DE"] 10).

1

II.    Background

A.    Factual Allegations[2]

J&D Enterprises, a New York partnership, owned the Site and entered into a lease

agreement for the Site with Kwik Discount Dry Cleaners, Inc. ("Kwik"), commencing August 1,

1984.  (Complaint ["Compl."], ¶ 4; Affidavit of Sanford Brand ["Brand Aff."][3], ¶ 3).  Singer, as

president of Kwik, signed the lease.  (Compl., ¶ 6; Brand Aff., ¶ 7).  J&D Enterprises

subsequently assigned its interest under the lease to J&D Enterprises, LLC ("J&D").  (Compl., ¶

5; Brand Aff., ¶ 6).  In 2013, J&D transferred its ownership of the Site to plaintiff.  (Compl., ¶

23; Brand Aff., ¶ 6).  Prior to the lease with Kwik, "no occupant in or about the premises was

doing business as a dry cleaner."  (Compl., ¶ 26; Brand Aff., ¶ 10).

Pursuant to paragraph thirty-nine (39) of the lease and paragraph fifty-eight (58) of the

rider to the lease, respectively, "all provisions [of the lease] were binding and for the benefit of

any successor of [J&D] and [Kwik][,]" (Compl., ¶ 22; Brand Aff., ¶ 5), and Kwik had the right to

assign the lease to another corporation owned by its same shareholders.  (Compl., ¶ 7; Brand

Aff., ¶ 4).  Singer, together with Linda Singer, Janice Singer and Scott Singer, were the

shareholders of Kwik.  (Compl., ¶¶ 8-9).  Kwik subsequently assigned the lease to Hasn, "a

corporation formed a couple of months after the lease commenced."  (Compl., ¶ 10; see also

Brand Aff., ¶ 7).  Hasn, thus, became a tenant of the Site and conducted business as Kwik

---

[2]   The factual allegations in the complaint are accepted as true, as required on a motion
seeking entry of a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil
Procedure.  See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v.
Moulton Masonry & Constr., LLC, 779 F.3d 182, 188 (2d Cir. 2015).

[3]   At all relevant times, Sanford Brand ("Brand") was the managing member of plaintiff,
J&D Enterprises and J&D Enterprises, LLC.  (Brand Aff., ¶¶ 1-2).

Cleaners.  (Compl., ¶¶ 11-12; Brand Aff., ¶ 7).  Singer "managed the day to day operations of [Hasn] until it ceased occupancy" of the Site.  (Compl., ¶ 13; <u>see also</u> Brand Aff., ¶ 8 ["From the time the Lease was signed in 1984, to the date [Hasn] ceased occupancy in October 2010, Howard Singer was the only individual that I observed running the day-to-day operations of [Hasn]"]; and <u>id.</u>, ¶ 9 ["As part of my duties as plaintiff's managing member, I had visited the premises on a weekly basis, from 1984 to October 2010, and the only individual I observed at the premises was Mr. Singer."])

During Hasn's occupancy of the Site, it used perchloroethylene ("perc" or "PCE") as a cleaning agent, (Compl., ¶ 27), notwithstanding that its "shareholders, officers and employees knew of the hazardous nature of perc, that its disposal by dumping or spilling was prohibited and that it was regulated as a hazardous substance by various government agencies."  (Compl., ¶ 28).  Each of Hasn's shareholders "helped to manage [its] dry cleaning business and regularly assisted in overseeing its activities at the premises and assisted in ordering and paying for [its] supplies, including perc."  (Compl., ¶ 29).

Hasn ceased occupying the Site on or about October 2010, (Compl., ¶ 30), and "no other party had leased or occupied the [Site]" from that point, (Compl., ¶ 31; <u>see also</u> Brand Aff., ¶ 11), until February 1, 2014.  (<u>See</u> Reply Declaration, Ex. A).

In 2013, plaintiff applied for a bank refinance, which required "a phase 2 environmental site assessment" ("the environmental site assessment") at the Site at a cost of four thousand five hundred dollars ($4,500.00).  (Compl., ¶¶ 32-33; Brand Aff., ¶ 12).  During the environmental site assessment, "PCE-contaminated soil" was discovered "beneath the floor slab of the space previously leased by [Hasn][,]" (Compl., ¶ 34; Brand Aff., ¶ 13), causing the Site to become "a

3

hazardous waste site." (Compl., ¶ 45). In June 2013, after Brand notified the Suffolk County Department of Health Services ("SCDHS") about the contaminated soil, (Brand Aff., ¶ 16 and Ex. A), the SCDHS required plaintiff to remove the contaminated soil and approved a plan for removal of the contaminated soil from the Site submitted by Merritt Environmental Consulting Corp. ("MECC"), which had been retained by plaintiff for that purpose. (Compl., ¶¶ 53, 54, 56; Brand Aff., ¶¶ 16-17). The most recent invoice submitted to plaintiff by MECC regarding "the scope of services" completed, and remaining to be done, at the Site for remediation of the hazardous waste is in the amount of twenty-five thousand three hundred dollars ($25,300.00). (Brand Aff., ¶ 18).

In addition, plaintiff retained East Coast Environmental Restoration, Inc. ("ECER") to perform the excavation work at the Site, which included removal of more than one hundred thirty-four (134.14) tons of PCE-contaminated soil, at a cost to plaintiff of one hundred seventy-two thousand two hundred fifty-five dollars and six cents ($172,255.06). (Brand Aff., ¶¶ 21-22). Moreover, according to Brand, MECC has now advised plaintiff that it must install three (3) groundwater monitoring wells at the Site, at an unspecified cost. (Id., ¶ 23).

Defendants have not responded to plaintiff's demand that they pay both its response costs and the cost of the environmental site assessment. (Compl., ¶¶ 74-75; Brand Aff., ¶¶ 24-25).


B.      Procedural History

On September 24, 2013, plaintiff commenced this action against defendants pursuant to, *inter alia*, CERCLA, seeking judgment (a) in the amount of eighty-three thousand eight hundred eighty-five dollars ($83,885.00), with interest, and (b) declaring that defendants are responsible

for any future response costs incurred for remediation of the hazardous waste on the Site (second cause of action). Plaintiff asserts claims, *inter alia*, (1) against defendants for CERCLA violations (first cause of action), negligence (third and seventh causes of action), public and private nuisance (eighth and ninth causes of action, respectively), and trespass (tenth cause of action); and (2) against Hasn for breach of the lease (fifth cause of action).[4]

Hasn was served with a summons and the complaint on October 1, 2013, (DE 4), and Singer was served with a summons and the complaint on October 7, 2013, (DE 7). Thus, defendants were required to serve an answer on or before October 22 and October 28, 2013, respectively. See Fed. R. Civ. P. 12(a)(1)(A)(i). Although neither defendant denies receiving the summons and complaint, they have not filed an answer pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, nor a proper motion to dismiss the complaint in accordance with Rule 12(b) of the Federal Rules of Civil Procedure, the local rules of this Court and my individual rules to date. Moreover, no attorney has ever appeared on behalf of either defendant in this action.

On October 23, 2013, the Court issued a Notice of Hearing, *inter alia*, scheduling an initial pretrial conference in this case on January 21, 2014 at 11:15 a.m. By letter dated November 5, 2013, plaintiff notified defendants of the initial conference. (DE 8). Neither defendant denies receiving notice of the initial pretrial conference.

By letter dated January 16, 2014, plaintiff requested an adjournment of the initial

---

[4] Plaintiff's fourth cause of action is asserted against Trumbull only, which has been dismissed from this case. Plaintiff's sixth cause of action asserts only that J&D was a covered person under CERCLA and became liable under CERCLA to plaintiff, (Compl., ¶¶ 85-86), but J&D is not named as a party in this case. Accordingly, plaintiff's sixth cause of action is dismissed for failure to state a plausible claim for relief.

conference on the basis, *inter alia*, that it intended to file a motion for a default judgment against

defendants for their failure to serve and file an answer. (DE 11). By order dated January 17,

2014, the initial conference was converted into a hearing on plaintiff's motion for a default

judgment and was adjourned until March 6, 2014. (DE 12). By order dated March 4, 2014, I,

*inter alia*, granted plaintiff's request for an adjournment of the hearing on its motion for a default

judgment and adjourned the hearing until April 10, 2014. On March 4, 2014, plaintiff served a

copy of the March 4, 2014 order upon defendants. (Declaration of Ali F. Weinberg ["Weinberg

Decl."], Ex. B). Neither defendant denies receiving a copy of the orders and, in fact, by letter

dated March 10, 2014, Singer indicated, *inter alia*, (1) that he could not attend the hearing, nor

afford an attorney; (2) that the dry cleaning store was opened on the Site in 1984; (3) that the

only shareholders of the corporation were Daniel and Janice Singer; (4) that he was just "an

officer with no benefit * * * [and] was not an owner" of the corporation; (5) that he "worked in a

completly [sic] diffrent [sic] store," located in Hicksville, New York, until 1997; (6) that from

1984 to 1997, the "processors" of the dry cleaning store at the Site were Scott Singer, whom he

identifies as the president of Hasn, John Palmer and Kevin Walsh; (7) that when he took over the

dry cleaning store at the Site in 1997, he "had a state of the art dry to dry cleaning machine

installed, replacing the outdated transfer equipment[,] * * * [which] was 100% approved by

NYSDEC[;]" and (8) that from 1997 to 2010, "the years [he] was responsible," (a) "hazardous

waste material was transported and documented by Safety Kleen[,] an accredited company in

Amityville, N.Y.[,]" and (b) "there were no documented spills and no problems as documented

by NYSDEC[,]" notwithstanding that "a yearly inspection * * * was done by a private company

[identified as James J. Cleary] making a report as to the fact that machinery was in perfect

working order, and was in full compliance with the NYSDEC [and] also had no spills[.]" (Weinberg Decl., Ex. C).

Neither defendant appeared for the hearing on April 10, 2014. Accordingly, the Court issued an order, *inter alia*, (1) directing defendants to show cause, by serving and filing an affidavit on or before 5:00 p.m. on May 12, 2014, why a default judgment should not be entered against them pursuant to Rule 16(f) of the Federal Rules of Civil Procedure; (2) scheduling a pretrial status conference in this action for May 15, 2014; and (3) advising defendants that their failure to file an affidavit in compliance therewith, or to appear for the May 15, 2014 conference, would result in the entry of a default judgment against them. (DE 17). Neither defendant denies receiving a copy of the April 10, 2014 order.

By letter dated April 15, 2014, which is not subscribed by Singer as being true under penalty of perjury as required by 28 U.S.C. § 1746,[5] Singer indicated, *inter alia*, (1) that "[f]rom 1997-2010, it is recognized by the US Environmental Protection Agency * * * and the Department of Environmental Conservation that Kwik Cleaners ha[d] operated safely and without any spills[;]" (2) that "[t]he operations from 1984-1997 were done with outdated transfer equipment that may have caused the alleged contamination[;]" and (3) that "[s]ince [he] did not work in th[e] store [at the Site] * * * from 1984-1997 and was not the owner who had 100%

---

[5] Section 1746 of title 28 of the United States Code provides, in relevant part, that "[w]herever, under any * * * rule, * * * [or] order, * * * any matter is required * * * to be supported, evidenced, established, or proved by the sworn * * * affidavit, in writing of the person making the same * * *, such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn * * * statement, in writing of such person which is subscribed by him, as true under penalty of perjury, * * *." Accordingly, Singer's letter is not a proper substitute for the affidavit required by both the Court's April 10, 2014 order and Local Civil Rule 7.1(a)(3) of the Court's local rules pertaining to motion practice.

shares[,] [he] ask[s] that th[e] complaint be dismissed[.]" (Weinberger Decl., Ex. E) (emphasis omitted).

Defendants did not comply with the April 10, 2014 order to show cause and did not appear for the conference on May 15, 2014. Accordingly, during the conference on May 15, 2014, I, *inter alia*, directed plaintiff's counsel to serve defendants with a motion for a default judgment and scheduled a further status conference on July 17, 2014. The status conference was subsequently converted into a telephone conference. Defendants do not deny receiving notice of the conference.

During the July 17, 2014 telephone conference, for which defendants failed to appear, *inter alia*, I set a briefing schedule for plaintiff to move for summary judgment against defendants and scheduled a further status conference for November 3, 2014. Defendants do not deny receiving notice of the further status conference.

By letter dated August 11, 2014, which, although designated as a motion, does not comply with either Local Civil Rule 7.1(a) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York or my individual rules pertaining to motion practice, Singer requested, *inter alia*, that the complaint be dismissed as against him because he has "proven * * * that from 1997-2010 there was full compliance with the DEC and other agencies." (DE 29). By order dated August 20, 2014, *inter alia*, Singer's letter motion was denied without prejudice for failure to comply with my individual rules. Singer does not deny receiving a copy of the August 20, 2014 order, but he nonetheless failed to renew his motion.

Plaintiff now moves for the entry of a default judgment against defendants, *inter alia*, (1) awarding it damages in the amount of one hundred ninety-seven thousand five hundred fifty-five

dollars and six cents ($197,555.06) pursuant to 42 U.S.C. § 9607(a); and (2) declaring that they are liable for all response costs to be incurred by plaintiff in the future pursuant to 42 U.S.C. § 9613(g)(2)(B).  In the notice of motion and cover letter served upon defendants, plaintiff advised them, *inter alia*, that if they "[did] not respond to the instant motion on time with an affidavit(s) and/or documents contradicting the facts asserted by the Plaintiff, the Court may accept Plaintiff's facts as true.  Judgment may be entered against [them] and in favor of Plaintiff without a trial."  In support of its motion, plaintiff submits, *inter alia*, a letter from the SCDHS, dated March 10, 1988, addressed to "Mr. Howard Singer, Kwik Cleaners, 6230 East Jericho Turnpike, Commack, New York 11725" from the SCDHS indicating, in relevant part:

> "On March 4, 1988, an inspection of your facility was performed * * * in order to determine your compliance with the Suffolk County Sanitary Code.  This inspection was in response to another complaint filed against your firm for emitting noxious fumes.
>
> On November 12, 1987, your firm was sent a certified letter from myself notifying you about this problem, and you were given recommendations to help alleviate the problem.
>
> Once again, your firm was found to be releasing fumes of perchloroethylene into your neighbor's internal air (violation of Article 10 Section 1014). * * *"

(Weinberg Decl., Ex. F).[6]

In opposition, Singer submits a letter, dated August 25, 2014, that is not subscribed by him as being true under penalty of perjury as required by 28 U.S.C. § 1746,[7] indicating, *inter*

---

[6]  Ms. Weinberg avers that she "personally retrieved," *inter alia*, the March 10, 1988 letter from the SCDHS, "having submitted a freedom of information request to review SCDHS' file for [the Site] * * *, and having reviewed the said file on August 12, 2014 at 1:30 PM[.]" (Weinberg Decl., ¶ 4(f)).

[7]  Accordingly, Singer's letter is not a proper substitute for the affidavit required by Local Civil Rule 7.1(b), nor does it otherwise comply with the other requirements of that rule pertaining to motion practice in this Court.

*alia*: (1) that "100% of shares of Hasn * * * were owned by Daniel [and] Janice Singer with Scott Singer as president[;]" (2) that "when [he] took over in 1997-2010 [he] complied with Suffolk County getting a license and inspection, [and] the Department of Energy Conservation regular inspections and lincense [sic];" (3) that "[y]early inspections by an independent engineer James Cleary * * * observed no leaks and gave perfect scores * * *[;]" (4) that "[t]here can be no other future costs because the store at [the Site] is rented to another dry cleaner * * *[;]" and (5) that "[f]rom 1997-2010 the dry cleaning plant was operated lawfully and with full compliance [so] [he] should not have to pay one penny." Singer submits a purported certified copy of a Certificate of Assumed Name from the New York State Department of State, Corporations and State Records Division, dated December 1, 1997, indicating, *inter alia*, that Singer was the president of Hasn.

In reply, *inter alia*, plaintiff submitted a copy of a lease between plaintiff and Sweet Sun Dry Cleaning, Inc. with respect to the Site, for the period commencing February 1, 2014, well after the contaminated soil was discovered on the Site. (Reply Declaration, Ex. A).

During a June 29, 2015 telephone conference before me, *inter alia*, Singer was advised that a corporation could not appear *pro se*; that he, as a layman, could not represent Hasn in this action; and that, therefore, a default judgment would be entered against Hasn for its failure to appear in this action. Nonetheless, no attorney has appeared on behalf of Hasn in this case to date.

III.    Discussion

"Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a

default in the course of litigation." <u>City of N.Y. v. Mickalis Pawn Shop, LLC</u>, 645 F.3d 114, 128 (2d Cir. 2011) (quoting <u>Vt. Teddy Bear Co. v. 1-800 Beargram Co.</u>, 373 F.3d 241, 246 (2d Cir. 2004)). "Rule 55 provides a two-step process for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." <u>Id.</u> (quotations and citation omitted).

"The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff[] * * * [and] is governed by Rule 55(a)[.]" <u>Mickalis Pawn</u>, 645 F.3d at 128. "Although Rule 55(a) contemplates that entry of default is a ministerial step to be performed by the clerk of court, * * * a district judge also possesses the inherent power to enter a default[.]" <u>Id.</u> (citations omitted). "The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." <u>Id.</u>

A.      Entry of Defendants' Default

1.      Hasn's Default

"The circumstances under which civil litigants may appear without counsel are limited by statute." <u>U.S. ex rel. Mergent Servs. v. Flaherty</u>, 540 F.3d 89, 92 (2d Cir. 2008). "Specifically, 28 U.S.C. § 1654 provides that in federal court, 'parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.'" <u>Id.</u>  Accordingly, "an individual who is not licensed as an attorney may not appear on another person's behalf in the other's cause." <u>Id.</u> (quotations and citation omitted);

see also Berrios v. New York City Hous. Auth., 564 F.3d 130, 132 (2d Cir. 2009) (holding that Section 1654 "authorizes only two types of representation: that by an attorney admitted to the practice of law by a governmental regulatory body and that by a person representing himself. * * * [It] does not permit unlicensed laymen to represent anyone else other than themselves." (quotations and citations omitted)); accord Lattanzio v. COMTA, 481 F.3d 137, 139 (2d Cir. 2007). Thus, Singer, as a layperson, is without authority to act on behalf of Hasn, a corporation, in this action. See, e.g. Lattanzio, 481 F.3d at 139 ("[A] layperson may not represent a separate legal entity such as a corporation.")

Moreover, since "a corporation may not appear in a lawsuit against it except through an attorney, * * * where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55, Fed. R. Civ. P." Grace v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 192 (2d Cir. 2006) (quotations, brackets and citation omitted); see also Eagle Assocs. v. Bank of Montreal, 926 F.2d 1305, 1310 (2d Cir. 1991) (finding that the defendant's willful disregard for a court order directing it to appear through counsel constituted a failure to "otherwise defend" under Rule 55(a)). Accordingly, a default shall be entered against Hasn in this action pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.

2.      Singer's Default

Although "the typical Rule 55 case is one in which a default has entered because a defendant failed to file a timely answer[,] * * * a district court is also empowered to enter a default against a defendant that has failed to 'otherwise defend.'" Mickalis Pawn, 645 F.3d at 129 (quotations, alterations and citations omitted). The Second Circuit has "embraced a broad

understanding of the phrase 'otherwise defend.'" Id.; accord Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 454 (2d Cir. 2013). Entry of default is appropriate, *inter alia*, where a defendant "affirmatively signal[s] to the district court its intention to cease participating in its own defense, even after the defendant was clearly warned that a default would result[,]" id. at 130, or where a defendant's conduct "indicates * * * a clear pattern of willful and deliberate disregard for the litigation." Bricklayers, 779 F.3d at 187; see also Guggenheim Capital, 722 F.3d at 455 (finding that the defendant's failure to deny that he received the complaint, the court's orders, or the notice of default judgment; to answer the complaint; or to comply with court orders "support[ed] an inference of willful default.")

Since plaintiff served defendants with its motion seeking the entry of a default judgment against them, Singer clearly had notice that his conduct, i.e., his failure to file an answer to the complaint or a proper motion to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, the local rules of this Court and my individual rules; to comply with court orders; and to appear for all but one (1) of the pretrial conferences before me, likely would result in the entry of a default against him, yet he persisted in his failure to "otherwise defend" this action against him. Specifically, Singer, *inter alia*, has not filed an answer or proper motion to dismiss to date; has not retained counsel to represent himself or Hasn in this action; did not file a proper response to the instant motion in accordance with the rules of this Court; has not provided any explanation for his failure to appear for three (3) pretrial conferences before me; and has not otherwise indicated any intent to properly defend the claims against him in this action henceforth. Accordingly, a default shall be entered against Singer in this action pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.

B.     Entry of a Default Judgment against Defendants

"Even after a defendant has defaulted, the defendant is nonetheless entitled [] to be heard concerning the nature and details of the judgment to be entered."  Mickalis Pawn, 645 F.3d at 132 (quotations, alterations and citation omitted).  Both defendants clearly had notice of plaintiff's motion seeking a default judgment against them, and Singer "actively participated in * * * the Rule 55 proceedings[,]" id., by, *inter alia*, serving an unsworn letter in opposition to the motion and participating in the telephone conference with the Court on June 29, 2015, both on his own behalf and purportedly on behalf of Hasn.  Accordingly, both defendants were afforded notice and an opportunity to be heard prior to the entry of any default judgment against them. Indeed, neither defendant contends otherwise.

Although "[i]t is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint[,]" Mickalis Pawn, 645 F.3d at 137 (quoting Vt. Teddy Bear Co., 373 F.3d at 246), the "court need not agree that the alleged facts constitute a valid cause of action."  Id.  "[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law."  Id. (quotations, brackets and citation omitted); see also Bricklayers, 779 F.3d at 187 ("A court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment.  Rather, the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true.")

1.       Defendants' Liability under CERCLA

Section 107(a) of CERCLA provides, in relevant part:

> "Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section– * * * (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, * * *, shall be liable for[,] [*inter alia*,]--(A) all costs of removal or remedial action incurred by the United States Government or a State * * * not inconsistent with the national contingency plan ['NCP']; [and] (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan[] * * *.

42 U.S.C. § 9607(a).[8] Thus, under CERCLA, property owners are "strictly liable for the hazardous materials on their property, regardless of whether or not they deposited them there." Niagara Mohawk, 596 F.3d at 120.

Property owners may, however, "seek reimbursement of their cleanup costs from others in the chain of title or from certain polluters—the so-called potentially responsible parties ('PRP's)[,]" Niagara Mohawk, 596 F.3d at 120, including, *inter alia*, any person who operated a facility upon which a hazardous substance was disposed, at the time of such disposal.  See 42 U.S.C. § 9607(a)(2); see also United States v. Bestfoods, 524 U.S. 51, 64, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998) ("CERCLA liability may turn on operation as well as ownership[.]") "CERCLA is a remedial statute; it reaches as far back into the past as necessary to identify both the hazardous wastes present at a site and those responsible for them under the statute."  Niagara Mohawk, 596 F.3d at 130.  "[E]ven a minimal amount of hazardous waste brings a party under the purview of the statute as a PRP[,]" id. at 131, and "[t]he traditional tort concept of causation

_____

[8] "Under CERCLA, 'disposal' means 'the discharge, deposit, injection, dumping, spilling, leaking, or placing of any ... hazardous waste.'"  Niagara Mohawk Power Corp. v. Chevron USA, Inc., 596 F.3d 112, 134 (2d Cir. 2009) (quoting 42 U.S.C. § 6903(3)).

plays little or no role in the liability scheme." Id.  Moreover, since Section 107 of CERCLA

"allows for complete cost recovery under a joint and several liability scheme[,] one PRP can

potentially be accountable for the entire amount expended to remove or remediate hazardous

materials." Id. at 121.

"To prevail on a § 9607(a) claim, a plaintiff must prove that (1) there has been a release

or threatened release of hazardous materials at a facility; (2) it has incurred response costs; (3)

the response costs were necessary and consistent with the NCP; and (4) the defendant is a PRP."

APL Co. PTE Ltd. v. Kemira Water Solutions, Inc., 999 F. Supp. 2d 590, 617-18 (S.D.N.Y.

2014); see also Niagara Mohawk, 596 F.3d at 130 ("[A] party seeking costs [under CERCLA]

need only prove: [that] there was a release or threatened release, which caused incurrence of

response costs, and that the defendant generated hazardous waste at the cleanup site."

(quotations, brackets and citations omitted)).  Defendants do not dispute the first three (3)

elements, i.e., that there was a release of a hazardous material at the Site; that plaintiff incurred

necessary responses costs as a result thereof;[9] and that the response costs were consistent with the

NCP.[10]

---

[9]  "Necessary costs are those required to contain and clean up hazardous releases, and include not only the cost of actual cleanup, but also include costs for investigation, planning, and remedial design." APL Co., 999 F. Supp. 2d at 619 (quotations and citation omitted).  The amounts set forth in the invoices of MECC and ECER pertain to services performed by, or on behalf of, those companies to contain and remediate the perc-contaminated soil on the Site and, thus, reflect the necessary response costs incurred by plaintiff.  Moreover, as the environmental site assessment related to the investigation of potential contamination of the Site, and provided important information about the nature and extent of the hazardous waste releases on the Site, the cost thereof is also a necessary response cost incurred by plaintiff.  See, e.g. Gache v. Town of Harrison, N.Y., 813 F. Supp. 1037, 1046 (S.D.N.Y. 1993).

[10]  Although "[c]ourts presume that actions undertaken by the federal, or a state, government are consistent with the National Contingency Plan[,] * * * private parties that have

16

"When determining CERCLA liability, there is nothing objectionable in basing findings solely on circumstantial evidence, especially where the passage of time has made direct evidence difficult or impossible to obtain." Niagara Mohawk, 596 F.3d at 131 (quotations and citation omitted). "CERCLA liability may be inferred from the totality of the circumstances as opposed to direct evidence." Id. at 136.

a.    Defendants are PRPs

"The definition of operator is very broad in the CERCLA context." Niagara Mohawk, 596 F.3d at 135. "[U]nder CERCLA, an operator * * * must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." Bestfoods, 524 U.S. at 66-67, 118 S. Ct. 1876; see also AMW Materials Testing, Inc. v. Town of Babylon, 584 F.3d 436, 444 (2d Cir. 2009) (holding that while the definition of "operator" within the CERCLA context is "sufficiently broad to extend beyond titular owners and day-to-day operators, [it] nevertheless implies a level of control over the hazardous substances at issue * * *.") Under this definition, defendants are PRPs under CERCLA, insofar as plaintiff has established that they conducted dry cleaning activities on the Site, resulting in the disposal of perc, a hazardous waste, on the Site, during the relevant time period. See, e.g. Niagara Mohawk, 596 F.3d at 135.

───────────────

responded to hazardous substances must establish compliance." Niagara Mohawk, 596 F.3d at 137. Since plaintiff has established, *inter alia*, that it conducted a response with the ultimate approval of the SCDHS, it has demonstrated its compliance with the NCP under CERCLA. See id.

Since plaintiff established that defendants are PRPs under CERCLA and discharged

hazardous materials on the Site, defendants may avoid liability under CERCLA only by

establishing that they are "eligible for one of the three affirmative defenses available under §

107[b]."[11]  Niagara Mohawk, 596 F.3d at 132.  Section 107(b) of CERCLA provides, in relevant

part:

> "There shall be no liability under subsection (a) of this section for a person
> otherwise liable who can establish by a preponderance of the evidence that the
> release or threat of release of a hazardous substance and the damages resulting
> therefrom were caused solely by--(1) an act of God; (2) an act of war; (3) an act or
> omission of a third party other than an employee or agent of the defendant, or than
> one whose act or omission occurs in connection with a contractual relationship,
> existing directly or indirectly, with the defendant * * *, if the defendant
> establishes by a preponderance of the evidence that (a) he exercised due care with
> respect to the hazardous substance concerned, taking into consideration the
> characteristics of such hazardous substance, in light of all relevant facts and
> circumstances, and (b) he took precautions against foreseeable acts or omissions
> of any such third party and the consequences that could foreseeably [sic] result
> from such acts or omissions; or (4) any combination of the foregoing paragraphs."

42 U.S.C. § 9607(b); see also Niagara Mohawk, 596 F.3d at 120 ("Owners can escape liability

only if the pollution results from an act of God or an act of war, or if the owners [or operators]

establish they are 'innocent owners' under the statute.")  "Defenses of minimal involvement or

limited proof of responsibility * * * come in to play [only] during the damages phase when the

court is charged with equitably apportioning the costs of the cleanup among the PRPs."[12]  Id.

Since, *inter alia*, the factual allegations in the complaint, together with the uncontroverted

---

[11]  An additional affirmative defense, provided by a 1986 amendment to CERCLA and
codified at 42 U.S.C. § 9607(d), see AMW Materials, 584 F.3d at 442, is clearly inapplicable in
this case.

[12]  Defendants have not asserted a claim for contribution under Section 113(f) of
CERCLA, 42 U.S.C. § 9613(f), against any other PRP in this case.

documentary evidence in the record, establishes that defendants are PRPs under CERCLA and that hazardous material was discharged on the Site during defendants' operation of the facility thereupon, and defendants have not even alleged, much less established by a preponderance of the evidence, that they are eligible for any of the statutory affirmative defenses under CERCLA, defendants are liable to reimburse plaintiff for the necessary response costs it incurred at the Site under Section 107(a) of CERCLA as a matter of law.

### 2. Damages

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." Bricklayers, 779 F.3d at 189 (quotations, brackets and citations omitted); see also Mickalis Pawn, 645 F.3d at 128 ("The entry of a default, while establishing liability, is not an admission of damages." (quotations and citation omitted)). Although a court may conduct a hearing on the issue of damages under Rule 55(b)(2) of the Federal Rules of Civil Procedure, it is not required to do so. Bricklayers, 779 F.3d at 189; see also Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012) ("While Rule 55(b)(2) permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory.") "Upon entry of a default, a plaintiff's claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed." Cement & Concrete Workers, 699 F.3d at 234. "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon

evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." Id.

The uncontroverted documentary evidence submitted by plaintiff establishes that it has incurred response costs in the total amount of two hundred and two thousand fifty-five dollars and six cents ($202,055.06) for the environmental site assessment, the excavation work completed by ECER and the services provided, or to be provided, by MECC at the Site. (See Brand Aff., ¶¶ 12, 18, 21 and 22). However, plaintiff's complaint seeks judgment, *inter alia*, in the amount of only eighty-three thousand eight hundred eighty-five dollars ($83,885.00), plus interest. Rule 54(c) of the Federal Rules of Civil Procedure provides, in relevant part, that "[a] default judgment must not differ in kind from, *or exceed in amount*, what is demanded in the pleadings." (emphasis added). Thus, by its terms, Rule 54(c) "permits neither increases 'in kind. . . or. . . in amount' from the figure specified in the demand for judgment." Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007). Accordingly, plaintiff's motion for a default judgment is granted to the extent that plaintiff is awarded judgment against defendants, jointly and severally, in the amount demanded in the complaint, i.e., eighty-three thousand eight hundred eighty-five dollars ($83,885.00), for the response costs it incurred at the Site pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

        3.      Prejudgment Interest

Section 107(a) of CERCLA provides, in relevant part:

> The amounts recoverable in an action under this section *shall* include interest on the amounts recoverable * * * accru[ing] from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure

> concerned. The rate of interest on the outstanding unpaid balance of the amounts
> recoverable under this section shall be the same rate as is specified for interest on
> investments of the Hazardous Substance Superfund established under subchapter
> A of chapter 98 of Title 26. * * *"

42 U.S.C. § 9607(a) (emphasis added).  Under CERCLA, "[p]rejudgment interest is []

mandatory."  APL Co., 999 F. Supp. 2d at 628 (quoting Goodrich Corp. v. Town of Middlebury,

311 F.3d 154, 177 (2d Cir. 2002)).  Since the complaint specifically seeks interest in the demand

for judgment, plaintiff is awarded prejudgment interest on the total amount recoverable by it, as

set forth above, accruing "from the later of (i) the date payment of a specified amount [was]

demanded in writing, or (ii) the date of the expenditure concerned," as provided by Section

107(a) of CERCLA.  **On or before July 15, 2015**, plaintiff shall serve defendants with a

proposed judgment, including the amount of prejudgment interest calculated in accordance with

this Order and Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).  Defendants must serve any

objections to the amount of prejudgment interest sought in the proposed judgment **by 5:00 p.m.**

**on July 22, 2015**.  Plaintiff shall file the proposed judgment and any objections thereto, and

submit courtesy copies thereof to the Court, **by 5:00 p.m. on July 24, 2015**, or it will be deemed

to have waived its claim for prejudgment interest against defendants.


4.      Declaratory Judgment

Section 113(g)(2) of CERCLA provides, in relevant part, that in any action for recovery

of costs pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, "the court *shall* enter a

declaratory judgment on liability for response costs or damages that will be binding on any

subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2) (emphasis added). Thus, under Section 113(g)(2) of CERCLA, "[t]he entry of declaratory judgment as to liability is mandatory." New York v. Green, 420 F.3d 99, 111 (2d Cir. 2005) (quotations and citation omitted); see also New York v. Solvent Chem. Co., Inc., 664 F.3d 22, 25 (2d Cir. 2011) (holding that with respect to claims for recovery of costs under Section 107, "CERCLA section 113(g)(2) requires a district court to 'enter a declaratory judgment on liability for response costs * * *.'") Accordingly, plaintiff is awarded judgment declaring that defendants are responsible for any further response costs incurred by it that are necessary to remediate the hazardous waste, i.e., the perc, on the Site, and that are consistent with the NCP, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2).

IV.    Conclusion

For the foregoing reasons, plaintiff's motion for the entry of a default judgment against defendants pursuant to Rule 55 of the Federal Rules of Civil Procedure is granted to the extent that defaults shall be entered against defendants and a default judgment shall be entered (1) against defendants, jointly and severally, awarding plaintiff (a) the total amount of eighty-three thousand eight hundred eighty-five dollars ($83,885.00) for recovery of the response costs it incurred at the Site pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and (b) prejudgment interest in accordance with this Order and Section 107(a) of CERCLA, 42 U.S.C. § 9607(a); and (2) declaring that defendants are responsible for any further response costs incurred by plaintiff that are necessary to remediate the hazardous waste, i.e., the perc, on the Site, and

that are consistent with the NCP, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2). **On or before July 15, 2015**, plaintiff shall serve defendants with a proposed judgment, including the amount of prejudgment interest calculated in accordance with this Order and Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). Defendants must serve any objections to the amount of prejudgment interest sought in the proposed judgment **by 5:00 p.m. on July 22, 2015**. Plaintiff shall file the proposed judgment, and any objections thereto, and submit courtesy copies thereof to the Court, **by 5:00 p.m. on July 24, 2015**, or it will be deemed to have waived its claim for prejudgment interest against defendants. Pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, the Clerk of the Court shall serve notice of entry of this order upon all parties as provided in Rule 5(b) of the Federal Rules of Civil Procedure and record such service on the docket.

SO ORDERED.

_____/s/_____
Sandra J. Feuerstein
United States District Judge

Dated: July 9, 2015
        Central Islip, New York